ANN HERLIHY, administratrix, *vs.* ALEXANDER E. LITTLE & another.

CHARLES W. CRANE, administrator, *vs.* SAME.

Essex.   November 4, 1908. — November 27, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Practice, Civil,* Amendment, Conduct of trial, Ordering verdict.   *Negligence,* Employer's liability, Causing death.   *Employers' Liability Act,* Notice.

The declaration in an action of tort against an employer, brought by one describing himself as the administrator of the estate of an employee of the defendant, alleged in a first count that by reason of negligence on the part of the defendant the plaintiff's intestate was " mortally wounded and killed," in a second count that he " was greatly injured and died in consequence thereof," and in the third and fourth counts that he was riding in an elevator which fell " thereby inflicting great injury . . . in consequence of which injury he died."   The notice which had been given to the defendant under R. L. c. 106, § 75, stated that the death was preceded by conscious suffering.   Before the trial, the plaintiff moved to amend the writ and declaration so as clearly to set forth an action under R. L. c. 106, § 73, by the dependent next of kin of the deceased for death not preceded by conscious suffering.   After a hearing, the motion was granted, the judge filing no memorandum.   The defendant alleged an exception.   *Held,* that on the record it must be assumed that, before allowing the amendment, the judge was satisfied that the cause of action intended by the plaintiff when the writ was issued was that set forth in the amendment; and that it could not be said as matter of law that the amendment introduced a cause of action not intended when the writ was issued.

While the giving of a sufficient statutory notice to an employer under R. L. c. 106, § 75, is a condition precedent to recovery by an employee, his administrator or his next of kin under §§ 71–73, such a notice is not to be construed with technical precision.

The purpose of the notice to an employer by an employee, his administrator or his next of kin, which by R. L. c. 106, § 75, is required as a condition precedent to recovery under §§ 71–73, is to give to the employer information as to the time, place and cause of the employee's injury, and not to advise him specifically as to its details or effects.

A notice from an employee, his administrator or his next of kin to his employer under R. L. c. 106, § 75, which contains a statement of facts which is incorrect as to a subject matter not required to be stated, is not invalidated thereby if it

also contains a sufficient statement of the time, place and cause of the employee's injury.

After a notice has been given to an employer by the administrator of an injured employee under R. L. c. 106, § 75, which states in sufficient detail the time, place and cause of the injury to the employee, and also that the employee "received personal injuries resulting in death preceded by conscious suffering," the dependent next of kin of the employee are not precluded from bringing without a further notice an action under § 73 for death of the employee without conscious suffering.

At the trial of an action by the next of kin of one who, while in the employ of the defendant, had received injuries which resulted in his death without conscious suffering, it appeared that the injuries resulted from the fall of an elevator, upon which the employee was riding, which was caused by a defective condition due to the defendant's negligence. There was evidence that at the time of the accident there were thirteen persons in the elevator car, and that at some time previous to the accident there had been in the elevator a notice, signed by the defendant, that not more than ten persons at a time should ride thereon. There was evidence tending to show that no such notice was in the elevator at the time the employee boarded it, that there were not ten persons on board when she did so, and that the additional weight of three persons was not a contributing cause of the accident. *Held,* that a verdict for the plaintiff was warranted.

Where the evidence introduced at a trial is conflicting and the jury would find for the plaintiff if they believed the evidence relied on by the plaintiff and disbelieved that relied on by the defendant, a request to direct a verdict for the defendant must be refused.

It is proper for the judge presiding at a trial to refuse to grant a request for a ruling which deals with a particular phase or fragment of the testimony not decisive of the case.

At the trial of an action against an employer to recover for the death of an employee, it appeared that the death resulted from the fall of an elevator due to its defective condition, and that it was the duty of the employee to report to the defendant any defect in the elevator. At the time of the accident, the employee was running the elevator. The defendant requested the presiding judge to rule that, "if the elevator at the time of the accident was out of repair, the plaintiff could not recover." The request was refused. *Held,* that the request was refused properly, since it omitted the necessary element that in the exercise of reasonable prudence it would have been possible for the employee to have discovered the want of repair.

At the trial of an action against an employer to recover for the death of an employee, it appeared that the death resulted from the fall of an elevator due to its defective condition, that it was the duty of the employee to notify the defendant of any defect which might arise in the elevator, and that the employee was running the elevator at the time of the accident. The defendant requested the presiding judge to rule that, if the employee knew the defective condition of the elevator at the time of the accident, the action could not be maintained, and the request was refused. *Held,* that the request was refused properly, since such knowledge on the part of the employee would not preclude recovery unless he also appreciated the risk of running the elevator under such conditions.

It is not as matter of law want of due care on the part of the assistant superintendent of a factory while running an elevator to refuse to heed a suggestion as to how to run the elevator, made by an inferior who is not shown to have any knowledge as to elevators.

Two ACTIONS OF TORT to recover for the deaths of the intestates of the plaintiff, caused by the fall of an elevator and alleged to have been due to its defective condition. Writs in the Superior Court for the county of Essex dated respectively December 20 and 22, 1902.

Before the trial, which was before *Bell*, J., he allowed the amendments described in the opinion, and the defendants excepted.

At the trial, it appeared that at the time of the accident the elevator was being operated by the intestate of the plaintiff in the second case. Other evidence tended to show the following facts:

Upon one side of the elevator there was a runway in which ran a counterweight weighing eight hundred and fifty pounds. The sides of the runway, sometimes called guides, were, at a point a little above the office floor, so close together that the counterweight was likely to jam and catch in the guides. As the elevator ascended just before the time of the accident, the counterweight in descending caught at the place in the runway just above the office floor where the guides were too close together and remained there instead of going to the bottom of the runway as it ordinarily would, the elevator continuing on its journey upward. Just as the elevator arrived at the point where it stopped, another elevator which was operated by the same main belt as that which operated the elevator in question started, throwing an additional load upon the belt, causing it to run off the pulley. Crane, the intestate in the second case, reversed the shipper rope and the car immediately started downward and, not having the assistance of the counterweight and the elevator machinery, began to fall. While it was falling, the slack in the cable attached to the counterweight tightened, causing the counterweight to ascend rapidly with a jerk to the top of the building where it struck the timbers holding the sheaves which carried the hoisting cable of the elevator, breaking the cable to which the counterweight was attached. The counterweight thereupon descended along the groove of the runway until it reached the point where the guides were too close, where it left the runway and fell into the car of the elevator. At the same time, a smaller piece of the counterweight, the cable holding it having been broken by the impact, fell down the elevator well and broke through the top

into the elevator car, killing without conscious suffering the intestates of the plaintiffs. Upon previous occasions, when there were passengers in the elevator, it had stopped at one time near the office floor and at two other times at or about the place where it stopped upon the day of the accident. There was expert testimony that the accident was caused by a defect in the condition of the runway in which the counterweight ran, the guides being in some places too narrow, thus causing the counterweight to stick in the runway and put an additional strain on the elevator of eight hundred and fifty pounds, the weight of the counterweight, that ordinary inspection would have revealed the defect, and that the number of people in the car had nothing to do with the accident. Other material facts which might have been found on the evidence are stated in the opinion.

At the close of the evidence, the defendants requested the presiding judge to rule in each case (1) that upon all the evidence the plaintiff was not entitled to recover; (2) that upon all the evidence in the case it appeared that there was a notice issued by the defendants to its employees to the effect that only ten people, including the operator of the car, should be allowed in the elevator at any one time, and also that at the time of the accident there were thirteen passengers in the car, and that this number was known to the plaintiff's intestate, and that there was, therefore, upon the part of the plaintiff's intestate disobedience of the rule which upon all the evidence in the case contributed to the cause of the fall of the elevator and the plaintiff was not entitled to recover.

In the second case, the defendants made the following additional requests for rulings:

(3) That, if it was the duty of Crane to look after the passenger elevator and to report defects therein or trouble therewith to the agent of the owners and the elevator at the time of the accident was out of repair, the plaintiff could not recover for the death of said Crane.

(4) That, if Crane knew the condition of the elevator, the action could not be maintained and the verdict should be for the defendants.

(5) That, if the elevator upon some previous occasion while

Crane was operating it stopped and at that time he started to pull the shipper rope to cause the elevator to descend and was told not to do so and, upon the day of the accident when the elevator stopped, Crane did pull the shipper rope causing the elevator car to descend, he was guilty of negligence and the action could not be maintained.

(6) That if, after the elevator stopped upon the day of the accident, Crane by pulling the shipper rope too far caused the car to descend, he was guilty of negligence and the action could not be maintained.

The presiding judge refused the requests, and, verdicts having been returned for the plaintiffs, reported the cases for determination by this court. If the ruling was correct, judgment was to be entered on the verdicts; otherwise such order was to be made as justice might require.

*W. I. Badger & W. H. Hitchcock*, for the defendants.

*J. P. Sweeney*, for the plaintiff Herlihy.

*S. Parsons*, (*H. A. Bowen* with him,) for the plaintiff Crane.

RUGG, J.   These two actions were brought in the name of the personal representatives respectively of Mary F. Herlihy and of Benjamin O. Crane.   The declaration in the Herlihy case contained four counts, each alleging in substance that the plaintiff was the administratrix of Mary F. Herlihy and that her intestate, by reason of specified negligence, in the first count, was " mortally wounded and killed " ; in the second, " was greatly injured and died in consequence thereof "; and in the third and fourth, was riding in an elevator, which fell " thereby inflicting great injury . . . on the . . . intestate, in consequence of which injury she died."   The notice given under R. L. c. 106, § 75, stated that the death was preceded by conscious suffering.   At the trial the plaintiff Herlihy moved to amend her writ by striking out the words indicative of her representative capacity, and by inserting, as descriptive of her, words of nearest kinship to the deceased and of dependency for support upon her wages, and to amend the declaration so as clearly to allege a cause of action under R. L. c. 106, § 73.   The action thus set out after the amendment was by the dependent next of kin for the death, instantaneous or not preceded by conscious suffering, of her intestate.   This amendment was allowed against the exception of

the defendants, who contend that upon this record the court had no power to allow such an amendment. R. L. c. 173, § 48, empowers the Superior Court to allow any amendment, which will enable an action to be maintained for the cause for which it was originally intended to be brought. The court has no power to allow an amendment, which will introduce a new cause of action not intended at the time the writ was sued out. *Silver* v. *Jordan*, 139 Mass. 280. It is possible that the writ and declaration as originally framed set forth a cause of action under R. L. c. 106, § 72, for the recovery of damages for conscious suffering followed by death. But it does not unequivocally state conscious suffering, and, narrowly construed, asserts no such claim, while it does distinctly allege death as the result of the injury. At best it is doubtful on its averments whether the death was preceded by conscious suffering or not. It may be assumed that a cause of action under § 72 of R. L. c. 106 is a different cause of action from the one under § 73 of the same chapter. The notice given under R. L. c. 106, § 75, sets forth death and preceding conscious suffering, but such statements, necessarily preceding, and perhaps by a considerable time, the commencement of the action, are of slight consequence in determining the plaintiff's intent at the time of suing out the writ or drafting the declaration. The fact that the action was brought in the name of the administratrix of the deceased is some indication of an intent to proceed under § 72, but it is by no means conclusive, and amendments are often allowed to correct a mistake in this respect. *Hutchinson* v. *Tucker*, 124 Mass. 240. *Adams* v. *Weeks*, 174 Mass. 45. *Silva* v. *New England Brick Co.* 185 Mass. 151. *Drew* v. *Farnsworth*, 186 Mass. 365. The allowance of the amendment made certain which section of the statute was relied upon, and cleared up what was before doubtful upon the pleadings. Hence it cannot be said as matter of law on this record that it introduced a new cause of action. If it be suggested that something occurred outside the record, it must be assumed that the trial judge before allowing the amendment was satisfied upon what appeared before him that the cause of action intended to be brought was for the recovery of death without conscious suffering. The circumstances under which this finding was made are not reported, and hence cannot be reviewed. See R. L. c. 173,

§ 121. St. 1908, c. 457, was enacted too recently to be applicable to this case.

In the Herlihy case it is argued that, because the notice required by the employers' liability act was given by the administratrix, and contained the statement that the deceased " received personal injuries resulting in death preceded by conscious suffering," it will not support an action for death without conscious suffering. While the giving of a sufficient statutory notice is a condition precedent to a recovery, such a notice is not to be construed with technical refinement. Especially is this true when no counter notice is given as provided in R. L. c. 106, § 75 and c. 51, § 22. A description of the injury is not required. The purpose is to give to the employer information as to its time, place and cause, not to advise him specifically as to its details or effects. *Carroll* v. *New York, New Haven & Hartford Railroad*, 182 Mass. 237. By the present notice the defendants were informed of the death as the result of the injury and of its time, place and cause. The plaintiff was not required to give any further information. Amplification, which may turn out to be incorrect, as to a subject matter not required, cannot be held to invalidate an otherwise sufficient notice.

It has not been and could not properly have been argued in either action that there was no evidence of the negligence of the defendants. There was ample testimony to support a finding of that fact.

The intestate of each plaintiff was killed by the sudden drop of an elevator, in which they were riding, and the break and fall of a counterweight connected with its operation. There was evidence tending to show that at some time previous to the day of the accident a notice had been posted in the elevator, to the effect that only ten persons could ride at one time, and there appears to have been no dispute that at the time of the accident there were thirteen people in it. The jury might have found that there was no notice in the elevator at the time of the accident, and that Miss Herlihy was in the elevator before the prohibited number was reached. There was evidence also from several experts that the added weight caused by the three persons above the permitted number did not contribute to the accident. It might have been found that the violation of the

rule, if any was committed, was merely a condition of the accident, and not its cause, and was to be considered with all the other circumstances as bearing upon the question of the due care of the plaintiff's intestate. *McCarthy* v. *Morse,* 197 Mass. 332. It was open also for the jury to infer that there was no violation of the rule, on the ground that the notice had been removed before the accident and was no longer in force.

In the Crane case also there was a motion to amend the declaration, which was allowed against the defendants' exception. The first count in his original declaration clearly alleged instantaneous death as the ground of liability. For this reason, as well as for those heretofore stated, respecting the amendment in the Herlihy case, no error is disclosed in the allowance of the amendment.

The deceased, Benjamin O. Crane, was the assistant superintendent in the employ of the defendants, whose duty it was to see that the machinery in the factory was kept in repair, except that, with respect to the elevators, if they were out of order, it was his duty not to repair but to report to the owners of the building. There was contradictory evidence as to whether Crane knew of any defect in the elevator or of any irregularity in its working previous to the accident. Whether he did or not was therefore a question of fact. In other material aspects the evidence was conflicting. Even where it was not conflicting it was still for the jury to say how much of that which bore against the plaintiff's contention was entitled to credence. Without reviewing it in detail, it is plain that a verdict for the defendant could not have been directed. Therefore the first request for ruling was properly refused.

As to the several other specific requests for rulings made by the defendants, it is perhaps enough to say that they dealt with particular phases or fragments of the testimony, which were not decisive of the case. It was not the duty of the trial judge to discuss each of these severally, and instruct the jury upon them. It appears that the case was submitted to the jury under general instructions which were not excepted to. Hence the defendants do not appear to have suffered harm. But if the requests are examined in detail, no error appears in the refusals to grant them. The third request was refused properly, because it omits

the necessary element, that in the exercise of reasonable prudence it would have been possible for the deceased to have discovered the defect which actually resulted in the injury. The fourth could not have been given because mere knowledge of the condition of the elevator was not sufficient to preclude recovery. There also must have been an appreciation of the risk of its use. The fifth and sixth requests did not correctly state the law as applicable to the evidence. The only evidence that it was dangerous so to pull the shipper as to cause the elevator to descend, when it stuck, came from a foreman in the employ of the defendants, who said he had a general knowledge about machinery but was not an expert, who was not shown on the testimony to have possessed any knowledge as to elevators, and who was the inferior of Crane in position. He testified that he once told Crane not to start the elevator downward when it stuck. It is not, as matter of law, want of due care to refuse to heed the suggestion of one who knows nothing about the subject respecting which he undertakes to direct, unless there is a duty of obedience. Although experts upon elevators were witnesses, it does not appear that they were asked what might naturally have been expected to be the result of pulling the shipper as the plaintiff's intestate did under the then known conditions. In the absence of evidence, it cannot be said to have been so plainly a careless act as matter of common knowledge as to warrant an instruction to that effect.

What has been said respecting the notice in the elevator restricting the number of passengers to ten applies with almost equal force to the Crane case. It is not clear that the notice was in the car at the time of the accident, nor how long before it had been removed, nor could it be said to be certain upon the evidence that the accident resulted from the overloading of the elevator.

*Judgment on the verdict in each case.*